<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SHIRLEY PERKINS,                          :
                                          :
                 Petitioner,              :        Civil No. 11-6264 (JLL)
                                          :
            v.                            :        **OPINION**
                                          :
CHARLES WARREN, et al.,                   :
                                          :
                 Respondents.             :

**LINARES, District Judge**

 Petitioner Shirley Perkins ("Petitioner"), a prisoner currently confined at Edna Mahan Correctional Facility in Clinton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   For the reasons stated herein, the petition will be denied.

## I. BACKGROUND

 This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1)[1], will recount salient portions of the recitation of facts as set forth by Superior Court of New Jersey on direct appeal:

> On May 28, 2002, defendant and another woman, April Williams, were at Murphy's Tavern. On that occasion Shelton, another frequent patron of the establishment, left her pocketbook there. The pocketbook contained Shelton's cell phone. Either defendant or Williams took the pocketbook and emptied its contents, including the cell phone. The cell phone then came into the possession of Williams, who began using it.
>
> About two months later, Shelton called her own cell phone number. She reached Williams, informed Williams that she was the owner of the cell phone, and

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

demanded it back. Williams told Shelton that she would return the phone the next time the two of them saw one another.

The anticipated encounter between Shelton and Williams occurred at Murphy's Tavern on the night of August 1, 2002. Defendant also was present at the bar. The encounter sparked an argument, which escalated and spilled out onto the street, and concluded with Shelton being stabbed and left on the ground. Shelton was pronounced dead at 1:23 a.m. the following morning.

The State presented testimony concerning these events from Williams, five other eyewitnesses who had been at Murphy's Tavern the night of August 1, 2002, seven law enforcement officers who had responded to the scene or who otherwise investigated the incident, and the county assistant medical examiner who had performed the autopsy on the victim. Their testimony supported the State's contention that defendant had stabbed Shelton without justification.

…

April Williams also testified for the State. She admitted that she had been at Murphy's Tavern on August 1, 2002 with defendant, and that there had been a fight over Shelton's cell phone. Williams denied, however, having carried a knife with her that evening. Instead, she claimed that defendant had brought a knife with her because she had had a fight at the bar in the preceding week. Although Williams contends she never actually saw the knife, she testified that she was aware defendant was carrying one near the small of her back.

Williams denied seeing the stabbing. She contended that while the stabbing was taking place, she had been fighting with Shelton's friend Johnson. When Williams was pulled off of Johnson, she heard defendant say to Johnson, "You shouldn't ask me [any] motherf* *king questions." As defendant and Williams were walking away, two men tried to stop them. Williams hit one of the men with a crate. Williams recalled that defendant then sprayed mace at the males, which she had taken out of Williams' purse. Williams and defendant then attempted to board a bus when the police arrived.

…

Defendant testified on her own behalf at trial. She also presented two other witnesses: her daughter Shakira Green and a bystander at the scene of the stabbing, Wanda Wilson.

In her testimony, defendant claimed that Williams had stolen Shelton's pocketbook in May 2002 and had taken possession of Shelton's cell phone. Subsequently, on the evening of August 1, 2002, defendant went to Murphy's Tavern, along with April Williams and two friends named Lisa and Cassandra. According to defendant, the four of them arrived at the tavern at about 10:45 p.m. Defendant

2

acknowledged that she was wearing white shorts and a tank top, covered by a purple jersey. She did not deny, or offer competing proof regarding, the State's contention that her hair that day was red. However, defendant denied that she was carrying a knife or that she had known that Williams was carrying a knife.

According to defendant, she was dancing at the tavern when she was approached by Shelton. Shelton supposedly asked defendant to go outside and speak with "Tiny," also known as Karemiah Johnson. Defendant had known Johnson for about thirty years. The two of them went outside, along with Williams. Johnson then allegedly started to argue with defendant about the stolen cell phone.

Defendant testified that she had initially attempted to walk away from Johnson. However, Johnson then "snuck hit" Williams, causing Williams to retaliate. As Johnson and Williams continued fighting, Shelton allegedly joined the fray to assist Johnson, who was her close friend. Defendant testified that she also entered the fight, out of a desire to protect Williams. For the next half hour or so, the four women, and several others who joined in, intermittently argued and traded blows. In the meantime, a crowd of observers gathered.

Defendant testified that eventually she saw Williams pull a knife out of her pocketbook and stab Shelton. Defendant contended that she then took the knife from Williams because she was afraid that Williams, the mother of two of her grandchildren, would get into trouble. Defendant asserted that she passed the knife onto Cassandra and told her to dispose of it. Defendant then attempted to flee from the scene with Williams.

On cross-examination, defendant denied screaming "Die, b* * *h, die" or any other words in the direction of Shelton. Rather, defendant insisted it was Williams who had been screaming "f* *k, you b* * *h, you [weren't] going to get your phone" at Shelton. Defendant maintained that she herself had only been screaming at Williams, because she was upset with her.

*State v. Perkins*, 2007 WL 1261308, at * 1-4 (N.J. Super. Ct. App. Div. May 2, 2007).

A jury found Petitioner not guilty of murder, but convicted her on the lesser-included offense of passion/provocation manslaughter. *Perkins*, 2007 WL 1261308, at * 5. The jury also convicted Petitioner of two offenses for unlawful possession of a weapon. *Id.* At the time of sentencing, the judge granted the State's motion for an extended term, pursuant to N.J.S.A. 2C:44-3a, based on Petitioner's status as a persistent offender. *Id.* Given her extensive prior record, the court sentenced Petitioner to a fifteen-year term on the manslaughter conviction and a

3

concurrent five-year term on the weapons offenses. *Id.* Petitioner filed an appeal and the Appellate Division remanded the case for resentencing to merge the weapons offenses into the manslaughter conviction, and also to comply with recent case law concerning the formerly-applicable presumptive sentencing guidelines. *Id.* The New Jersey Supreme Court denied certification. *State v. Perkins*, 927 A.2d 1292 (N.J. 2007). On remand, the trial court merged the weapons offenses but reimposed the original sentence of a fifteen-year extended term on the manslaughter conviction, subject to an eighty-five percent parole disqualifier under N.J.S.A. 2C:43-7.2(a). *State v. Perkins*, 2010 WL 5418146 (N.J. Super. Ct. App. Div. Nov. 17, 2010). Petitioner filed a petition for post-conviction relief ("PCR"), which was denied by the trial court and said denial was affirmed by the Appellate Division. *Id.* The New Jersey Supreme Court denied certification. *State v. Perkins*, 17 A.3d 1245 (N.J. 2011).

In October 2011, Petitioner filed the instant habeas petition.  (ECF No. 1.)  She raises the following grounds for relief:

> GROUND ONE: THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR A JUDGMENT OF ACQUITTAL REGARDING THE CHARGE OF MURDER EMBODIED IN COUNT I, THEREBY NECESSARILY TAINTING THE JURY'S VERDICT FINDING THE DEFENDANT GUILTY OF THE LESSER INCLUDED OFFENSE OF PASSION/PROVOCATION MANSLAUGHTER ARISING THEREFROM
>
> GROUND TWO: THE TRIAL COURT ERRED IN PERMITTING THE STATE TO ELICIT CLEARLY INADMISSIBLE HEARSAY TESTIMONY FROM POLICE OFFICER WHICH IDENTIFIED THE DEFENDANT AS THE ALLEGED PERPETRATOR
>
> GROUND THREE: THE DEFENDANT WAS DENIED HER RIGHT TO A FAIR TRIAL AS A RESULT OF THE PROSECUTOR'S IMPROPER QUESTIONING OF HER CONVEYING THE IMPRESSION THE PROSECUTOR POSSESSED INFORMATION INDICATING THE DEFENDANT INTENTIONALLY WENT TO THE SCENE TO ASSAULT THE VICTIM
>
> GROUND FOUR: THE DEFENDANT WAS DENIED HER RIGHT TO A FAIR

4

TRIAL AS RESULT OF THE PROSECUTOR'S CROSS-EXAMINATION OF THE DEFENDANT ELICITING HER PRIOR CRIMINAL RECORD AFTER IT HAD BEEN FULLY DISCLOSED BY DEFENSE COUNSEL DURING DIRECT EXAMINATION

GROUND FIVE: THE TRIAL COURT ERRED IN PRECLUDING DEFENSE COUNSEL FROM ELICITING TESTIMONY ADVERSELY IMPACTING UPON THE CREDIBILITY OF APRIL WILLIAMS

GROUND SIX: TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBTAINING APRIL WILLIAMS' CLOTHES AND NOT SUBJECTING THEM TO DNA TESTING AND THE FAILURE TO RAISE THE ISSUE ABOUT THE POLICE LACK OF TESTING OF APRIL WILLIAMS' CLOTHING FOR THE VICTIM'S BLOOD.

GROUND SEVEN: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY CROSS-EXAMINE A KEY STATE WITNESS, APRIL WILLIAMS, ABOUT THE REASONS WHY SHE WAS TESTIFYING FOR THE STATE.

(Pet. ¶ 12.)[1]   After receiving notice pursuant to *Mason v. Meyers*, 208 F. 3d 414 (3d Cir. 2000) (ECF No. 2), Petitioner indicated that she wished to proceed with her petition "as-is" (ECF No. 4) and the Court entered an Order to Answer (ECF No. 5).   Respondents filed their Answer on March 13, 2013.   (ECF No. 15.)

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> . . .

---

[1] All caps in original.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254.

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." *Id.* A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d).[2] If a claim has been adjudicated on the merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." *Cullen*, 131 S.Ct. at 1402. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)); *see also Johnson v. Williams*, 133 S.Ct. 1088 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted").

'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply." *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 131 S.Ct. 770, 785

(2011) (quoting *Williams,* 529 U.S. at 410).   As the Supreme Court explains,

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.... Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington,* 131 S.Ct. at 786 (citations and internal quotation marks omitted).

"If this standard is difficult to meet—and it is—that is because it was meant to be."  *Burt v. Titlow,* 134 S.Ct. 10, 16 (2013) (citations and internal quotation marks omitted).   The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.  *Cullen,* 131 S.Ct. at 1398.

## B. Analysis

### 1.  Motion for Acquittal (Ground One)

In her first ground for relief, Petitioner argues that the trial court erred when it denied Petitioner's motion for a judgment of acquittal on the murder charge because it "tainted the jury's subsequent verdict finding Petitioner guilty of the lesser included offense of passion/provocation manslaughter."   (Pet. ¶ 12.)   Petitioner acknowledges that the State presented evidence identifying her as the individual who stabbed the victim, however Petitioner argues that all of the testimony indicated that the stabbing had been a "spontaneous, spur of the moment act" and there was nothing to indicate premeditation on her part.  (*Id.*)

Petitioner raised this claim on her direct appeal, where it was rejected by the Appellate Division:

> Defendant claims the trial judge should have granted her motion for judgment of acquittal on the murder charge after the State rested its case. She contends in this

regard that the judge's failure to remove the murder charge from the jury's consideration improperly tainted the deliberations, making the jury more prone to convict defendant on passion/provocation manslaughter. Defendant argues that no reasonable juror could have found that she had purposely or knowingly killed Shelton, and that the stabbing was instead "a spontaneous, spur of the moment act...."

In reviewing a trial court's decision to deny a motion for judgment of acquittal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Josephs*, 174 N.J. 44, 81 (2002). The State's evidence should be viewed in its entirety and given "the benefit of all its favorable testimony and all of the favorable inferences to be drawn from that testimony...." *State v. Spivey*, 179 N.J. 229, 236 (2004). Applying that standard here, we perceive no error in the judge's denial of the motion for acquittal on murder.

The crime of murder requires proof that defendant took the life of another person either knowingly or purposefully. *See* N.J.S.A. 2C:11-3. The State may satisfy defendant's intentional state of mind in a variety of ways. The State may prove that "it was the defendant's conscious object to cause [the] serious bodily injury that then resulted in the victim's death...." *State v. Cruz*, 163 N.J. 403, 417 (2000). Alternatively, the State may show that defendant "knew that the injury created a substantial risk of death and that it was highly probable that death would result." *Id.* at 417-18. Or the proofs may demonstrate "that the defendant was aware that it was practically certain that his conduct would cause serious bodily injury that then resulted in the victim's death...." *Id.* at 418. The prosecution can also prove that defendant "knew that the injury created a substantial risk of death and that it was highly probable that death would result." *Ibid.* There also must be "a sufficient connection between the victim's death and the defendant's state of mind." *Id.* at 416. However, "for deliberation to be found, no particular period of time need have elapsed between the formation of the defendant's homicidal plan and the execution of that plan." *State v. Ramseur*, 106 N.J. 123, 194 (1987), *cert. denied*, 508 U.S. 947, 113 S.Ct. 2433, 124 L. Ed.2d 653 (1993).

The Supreme Court has "long accepted that 'the use of a deadly weapon raises an inference that there was an intent to kill.'" *State v. Martini*, 131 N.J. 176, 271 (1993), *cert. denied*, 127 S.Ct. 1285, 167 L. Ed.2d 104 (2007) (quoting *State v. Thomas*, 26 N.J. 344, 357 (1978)). A knife may be considered a deadly weapon when "possessed under manifestly inappropriate circumstances" to its lawful use. *State v. Burford*, 163 N.J. 16, 20 (2000). *See also State v. Bowens*, 108 N.J. 622, 638 (1987) (noting that the force with which the injury was inflicted showed a "level of indifference and provide [d] ample basis for a conviction").

The trial judge correctly rejected defendant's contention that the State's proofs were

9

inadequate to support a guilty verdict on murder. The State presented corroborating proofs from Martin and from Brian Williams, who both had observed defendant raise her arm and then plunge the knife into Shelton's chest. Martin's testimony was particularly salient on defendant's homicidal intent, describing the stabbing as a "hard punch" and distinctly hearing defendant thereafter exclaim, "Die, b* * *h, die!" The proofs also included testimony that defendant had stepped away from the fighting on the street, obtained the knife from Williams, and then returned to wield the knife against Shelton. There was no proof that the victim was herself armed or that the life of defendant or her relative April Williams was in imminent danger. Several eyewitnesses also recalled defendant make provocative assertions at the scene about standing up for her "Little Bit." A reasonable jury could have concluded that such behavior comprised the intentional use of deadly force.

It is not dispositive, as defendant argues, that the knife was only thrust into the victim once. That single blow, described by Martin as a "hard punch," carried with it sufficiently extreme force to kill Shelton, and sufficed with the other proven facts to constitute murder.

We thus discern no unfair prejudice in the inclusion of murder along with the lesser-included offense of provocation/passion manslaughter in the jury charge. The circumstances here are distinguishable from *State v. Christener*, 71 N.J. 55 (1976), the main case relied upon defendant on this issue. In *Christener*, the "defendant's actions reveal[ed] an all-encompassing fear" of the victim, who had awakened defendant by pounding on his door in the middle of the night and who had lunged toward defendant and his wife looking like a "wild man." *Id.* at 62, 66. Here, there is no comparable proof that defendant was afraid of Shelton, or that she had in any way acted in self-defense. The murder charge in this case was entirely appropriate, even though the jury ultimately failed to convict on it, and, unlike in *Christener*, there is no prejudice flowing from "an unsupported instruction." *Id.* at 70-71.

*State v. Perkins*, 2007 WL 1261308, at * 6-8 (N.J. Super. Ct. App. Div. May 2, 2007).

A sufficiency of the evidence claim is governed by *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254–if the settled procedural prerequisites for such a claim have otherwise been satisfied-the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324; *accord McDaniel v. Brown*, 558 U.S. 120, 121, 130 S.Ct. 665, 175

L.Ed.2d 582 (2010) (per curiam); *Eley v. Erickson*, 712 F.3d 837, 847 (3d Cir. 2013). *Jackson* "requires a reviewing court to review the evidence in the light most favorable to the prosecution. Expressed more fully, this means a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel*, 558 U.S. at 133 (quoting *Jackson*, 443 U.S. at 326); *see also House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) ("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict"). The Court emphasized that "the standard...does not permit a court to make its own subjective determination of guilt or innocence." *Jackson*, 443 U.S. at 320, n. 13. Moreover, "a reviewing court must consider all of the evidence admitted by the trial court, regardless whether that evidence was admitted erroneously." *McDaniel*, 558 U.S. at 131 (citation and internal quotation marks omitted). Moreover, "under *Jackson*, the assessment of credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The question is "whether, viewing the evidence in the light most favorable to the state, it was objectively unreasonable for the Appellate Division to conclude that a rational trier of fact could have found, beyond a reasonable doubt that [petitioner] was guilty[.]" *Kamienski v. Hendricks*, Civil Action No. 06-4536, 2009 WL 1477235 (3d Cir. May 28, 2009).

In this case, the New Jersey Appellate Division denied Petitioner's sufficiency of the evidence claim, finding that the trial judge correctly rejected defendant's contention that the State's proofs were inadequate to support a guilty verdict on murder. The Appellate Division discussed

11

the substantial testimony from various witnesses, who observed Petitioner raise her arm and then plunge the knife into the victim's chest.   A witness described the stabbing as a "hard punch" and heard the Petitioner say, "Die, b* * *h, die!"   The state court properly found that a reasonable jury could have concluded that such behavior comprised the intentional use of deadly force and that there was sufficient evidence to support a charge of murder.   Thus, the New Jersey court's adjudication of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of *Jackson* and its progeny, and Petitioner is not entitled to habeas relief on Ground One of her petition.

## 2. Hearsay Testimony (Ground Two)

In her second ground for relief, Petitioner argues that the trial court erred when it permitted hearsay testimony from Officer Jose Ferreira regarding a statement made by Karemiah Johnson. Specifically, the trial court permitted the officer to testify about Ms. Johnson's statement to him based on the excited utterance exception to the hearsay rule.   (Pet. ¶ 12.)

Petitioner raised this argument in her direct appeal and the Appellate Division rejected it after engaging in a thorough analysis of the pertinent issues:

> Defendant contends that the trial judge erred in admitting, over her counsel's objection, a hearsay statement attributed to Karemiah Johnson during the course of the testimony of Officer Ferriera.

> Officer Ferriera had been dispatched to the crime scene at approximately 12:17 a.m. on August 2, 2002. Upon arriving, he put defendant in the back of his squad car. He then secured the crime scene and began to look for eyewitnesses. At that point, Officer Ferriera encountered Johnson. The officer described Johnson's emotional state as "calm." He perceived that Johnson was "[a] little bit upset, but not too much."

> Johnson then gave Officer Ferriera a statement, which the officer summarized at trial as follows:

>> She told me that [defendant] and April Williams were across the

12

> street with the victim. They have an argument. [Defendant] punched the victim. April handed her a knife and [defendant] stabbed her with it.

The trial judge denied defense counsel's application to strike this reference to Johnson's out-of-court statement.

On appeal, defendant argues that Johnson's statement, as recounted by Officer Ferriera, was hearsay under N.J.R.E. 802 and not admissible under any recognized hearsay exception. The State argues that the judge properly admitted the statement as an excited utterance under N.J.R.E. 803(c)(2). Alternatively, the State contends that the statement was also admissible as a present sense impression under N.J.R.E. 803(c)(1).

We agree with defendant that Johnson's statement to Officer Ferriera was offered for its truth. We also agree that that the statement was neither admissible as an excited utterance or a present sense impression.

As to the former hearsay exception, we conclude that even if Johnson's demeanor, which the officer inconsistently perceived as both "calm" and "a little bit upset," qualified under N.J.R.E. 803(c)(2) as a statement made while "under the stress of excitement," her statement was not made in the absence of an "opportunity to deliberate or fabricate." *See, e.g., State v. Cotto*, 182 N.J. 316 (2005) (requiring exclusion of excited statements made by victims to police approximately twenty minutes after a robbery because the defendants had sufficient time to deliberate or fabricate); *State v. Branch*, 182 N.J. 338 (2005) (holding that children who had witnessed a robbery had adequate time to deliberate during the approximated ten minutes that elapsed before a police officer had arrived and interviewed them).

Although the record does not contain a definitive time line, it appears that as much as a full half hour could have elapsed between the stabbing, estimated by eyewitness Benton to have transpired at 11:45 p.m., and Officer Ferriera's arrival at the scene at 12:17 a.m. Even if Benton's time estimate is inaccurate, a substantial number of events took place between the stabbing and the officer's interview of Johnson, including the disposal of the knife, defendant's encounter with the crowd, her flight with Williams to a bus stop, their boarding of the bus, their apprehension by police officers, and Officer Ferriera's efforts to secure the crime scene. Coupled with the officer's indefinite characterization of Johnson's state of mind, the substantial lapse of time before the interview took place weighs against classifying Johnson's statement as an admissible excited utterance. *Cf. In re J.A.*, 385 N.J.Super. 544 (App.Div. 2006) (holding that the excited utterance exception applied to statements of a crime witness during the course of an 9-1-1 call he made while chasing the suspect, and his follow-up statement to police about two minutes later indicating the suspect's direction of travel).

For similar reasons, we do not regard Johnson's statements to Officer Ferriera as an admissible present sense impression. That exception only pertains to observations "made while or immediately after the declarant was perceiving the event or condition and without opportunity to deliberate or fabricate." N.J.R.E. 803(c)(1). As we noted in our excited-utterance analysis, the record fails to demonstrate that Johnson lacked the opportunity to deliberate or fabricate before he spoke with Officer Ferriera. Moreover, the hearsay exception for present sense impressions does not embrace "narratives of a past occurrence" such as Johnson's account to the officer of what he saw happened. *State v. Cotto, supra*, 182 N.J. at 330.

Even if the hearsay objection to Johnson's out-of-court statement could have been surmounted, we also have serious doubts as to whether its admission would comport with present standards under the Confrontation Clause. Under the controlling case law established in *Crawford v. Washington, supra*, hearsay that is "testimonial" in nature cannot be admitted against an accused without the opportunity for cross-examination. *Id.*, 541 U.S. at 53-54, 124 S.Ct. at 1365, 158 L. Ed.2d at 194. Although we need not resolve the constitutional issue, Johnson's response to Officer Ferriera's questioning, after defendant and Williams had already been arrested, does appear to be testimonial. It is a statement in response to a police interrogation, and not one whose primary purpose was to address an ongoing emergency. *See Davis v. Washington*, 547 U.S. -----, -----, 126 S.Ct. 2266, 2273-74, 165 L. Ed.2d 224, 237 (2006).

Nonetheless, defendant is not entitled to a reversal of her conviction on this evidentiary error. Officer Ferriera's brief reference at trial to Johnson's interview statement was only a small piece of an overwhelming array of witnesses for the prosecution. At least six other witnesses-Martin, Brian Williams, Egerton, Benton, Trent and April Williams-independently testified in various ways that corroborated the incriminating parts of Johnson's account. Martin and Brian Williams in particular watched defendant plunge the knife into the victim. The jury had more than ample proof before it to find defendant guilty of passion/provocation manslaughter, irrespective of Johnson's statement.

After carefully considering these matters, we are satisfied that the trial court's admission of Johnson's statement to Officer Ferriera constituted harmless error. Given the other abundant proof of defendant's guilt, we do not regard the admission of this hearsay "of such a nature as to have been clearly capable of producing an unjust result...." R. 2:10-2; *State v. Macon*, 57 N.J. 325, 337-38 (1971) (reciting the harmless error standard); *see also State v. Cotto, supra*, 182 N.J. at 331 (deeming the erroneous admission of the hearsay statements harmless, where they merely "echoed" other details already heard by the jury).

*State v. Perkins*, 2007 WL 1261308, at * 8-10 (N.J. Super. Ct. App. Div. May 2, 2007).

14

The violation of a right created by state evidentiary law is not itself cognizable as a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 680 (1990))); *Ross v. Dist. Attorney of the Cnty. of Allegheny*, 672 F.3d 198, 207 n. 5 (3d Cir. 2012) (citing *Estelle*, 502 U.S. at 62). A federal claim may be established, however, if the admission of evidence did not merely violate state law, but rose to the level of a deprivation of due process. *Estelle*, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting *Spencer v. Texas*, 385 U.S. 554, 563–64 (1967)). To rise to that level, such an error must have been so pervasive as to have denied Petitioner a fundamentally fair trial. *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

Similarly, a federal claim may be established if the admission of hearsay did not merely violate state evidence law, but rose to the level of depriving Petitioner of her Sixth Amendment right to confront the witnesses against her. *See generally Crawford v. Washington*, 541 U.S. 36 (2004). In *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), the Supreme Court held that the Confrontation Clause does not preclude the admission of an unavailable witness's hearsay statement if it bears "adequate indicia of reliability," *i.e.*, if it falls within a "firmly rooted hearsay exception" or if it bears "particularized guarantees of trustworthiness." 448 U.S. at 66. More recently, the Supreme Court has held that the text of the Sixth Amendment limits the scope of the flexible test stated by *Roberts*:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

15

*Crawford*, 541 U.S. at 68.   An erroneous admission of testimonial hearsay in violation of the Confrontation Clause is "an error in the trial process itself," *U.S. v. Hinton*, 423 F.3d 355, 361–62 (3d Cir. 2005), and is therefore subject to review under the specialized standard of harmless error that applies in habeas proceedings.

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the U.S. Supreme Court held that, on federal collateral review of a state-court criminal judgment under § 2254, the court should apply a harmless error standard that is more "forgiving" than those that apply on direct appeal.   Citing concerns about finality, comity, and federalism, *Brecht* held that, on federal habeas review, a constitutional error is considered harmless unless it "'had a substantial and injurious effect or influence in determining the jury's verdict.'"   507 U.S. at 631 (quoting *Kotteakos v. U.S.*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112, 114, 116–120 (2007).   "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law has a substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).   *See also Bond v. Beard*, 539 F.3d 256, 275–76 (3d Cir. 2008) (applying the *Fry/Brecht* standard to a § 2254 Confrontation Clause claim).

Here, to the extent Petitioner is challenging the admission of the evidence under state evidentiary rules, that claim is clearly not cognizable in federal habeas review.   A short discussion about what a witness told the police officer about the incident certainly did not deny Petitioner a fundamentally fair trial.   Moreover, to the extent Petitioner challenges the admission of the Ms. Johnson's statements under the Confrontation Clause, the Court finds that any such erroneous admission was harmless.   As discussed above, there was substantial, corroborating witness testimony about the incident, all of which was nearly identical.   The statements by Ms. Johnson

16

which were relayed by the testifying officer were not novel or substantially different from the many witnesses who actually testified.   Any error in admitting the testimony was harmless. Petitioner has not shown that the Appellate Division's ruling was contrary to or an unreasonable application of Supreme Court precedent, accordingly, Petitioner is not entitled to relief on this ground.

### 3.  Prosecutorial Misconduct (Grounds Three and Four)

In Ground Three of the petition, Petitioner argues that her right to a fair trial was violated when the prosecutor questioned her in a way that "convey[ed] the impression the prosecutor possessed information indicating the Defendant intentionally went to the scene to assault the victim."  (Pet. ¶ 12.)  In Ground Four, Petitioner argues that the prosecutor also violated her rights when she cross-examined Petitioner about her prior criminal record, even though it had been fully disclosed by defense counsel during direct examination.  (*Id.*)

Petitioner raised both of these claims on direct appeal, where the Appellate Division denied relief:

> Defendant next argues that the prosecutor improperly questioned her on cross-examination, by insinuating that the prosecutor had information that defendant had intentionally gone to Murphy's Tavern in order to assault Shelton. We are unconvinced by this claim.
>
> In general, "a prosecutor must have 'reasonable grounds' for posing questions during cross-examination that impugn a witness's credibility." *State v. Daniels*, 182 N.J. 80, 99 (2004). Further, when cross-examining an accused the prosecutor may not pursue a line of questioning which places before the jury "innuendo evidence or inferences of evidence which the State could not get before the jury by direct testimony of the witness and which [the accused has] no opportunity to challenge meaningfully." *State v. Williams*, 226 N.J.Super. 94, 103 (App.Div.1988).
>
> Defendant contends that the prosecutor transgressed these boundaries when she cross-examined her as to her motivation for going to Murphy's Tavern on the night of the stabbing. Specifically, defendant complains of the following leading questions posed by the prosecutor:

17

Q. Now, let's get back to that night of [August] 1st into [August] 2nd. Isn't it a fact, that you went down to Murphy's Bar with a specific mission in mind?

\* \* \* \*

Q. And that you had a conversation that day or that evening outside of Murphy's Bar where you told Wanda [Wilson] no one is going to f\* \*k with my Little Bit. That's my partner, I do anything for her, that's why I came down here. She called me a couple days ago and that's why I'm down here. I can't let anything happen to my girl.

\* \* \* \*

Q. And isn't it a fact, that you also told Karemiah [Johnson] that you know I have to protect you?

\* \* \* \*

Q. From the testimony from Tracie Benton we learned you had a relationship with Karemiah [Johnson]?

A. No, I did not have a relationship with Karemiah. Karemiah is a junk[ie], I don't mess with junkies.

Q. And so that conversation that was overheard about why you were down there, and how you had to protect her was a lie Tracie Benton told you?

A. Yes, it's a lie.

Q. And when you were down there that evening, then, it wasn't your intention to protect anyone. Is that correct?

A. No. It wasn't my intention to protect no one. I went out to have a nice time.

Defendant argues that these questions insinuated that the prosecutor had some personal knowledge, not otherwise reflected in the proofs, regarding defendant's motivations for coming to the bar on the night of August 1, 2002. In particular, defendant claims that these questions raised an improper theme suggesting that defendant had a mindset of protectionism towards other women.

We are unpersuaded that this particular colloquy was unduly prejudicial. For one

18

thing, when defendant finally had the chance after her attorney's objections to respond to these questions, she emphatically denied that she had made the statements. She also denied, under oath, that she had gone down to the tavern to protect anyone. Further, defendant called Wilson as a witness, giving her the opportunity to refute the prosecutor's intimation on what Wilson was said to have been told, but defense counsel chose not to ask Wilson about this subject.

Moreover, the record before us contains no indicia that the prosecutor lacked a good faith factual basis to pose these questions. The theme of protecting others was by no means improper, and, indeed, was employed by defendant herself in direct examination when she explained that she had taken the knife from Williams after the stabbing in order to protect her from further trouble. Finally, we note that the prosecutor's summation did not mention defendant's alleged remark to Wilson.

In sum, we perceive no reversible error on this issue.

...

Defendant first argues that the prosecutor improperly queried her on cross-examination about her prior criminal convictions. That questioning, however, followed defendant's volunteering on direct examination that she had been previously convicted of robbery, theft and the possession of marijuana in a school zone with the intent to distribute it. Defense counsel seemingly revealed these prior convictions for a strategic advantage, to soften the blow of an anticipated cross-examination. Nonetheless, the prosecutor was entitled to explore these matters in her own questioning. *State v. Sinclair*, 57 N.J. 56, 62-63 (1970). The convictions were germane to defendant's credibility. *See* N.J.R.E. 609. The prosecutor did not harp upon the convictions, only spending a limited time confirming defendant's prior record without embellishment. Moreover, the judge issued a suitable limiting instruction, explaining to the jury that the convictions could only be used for credibility. None of this was impermissible.

*State v. Perkins*, 2007 WL 1261308, at * 10-11 (N.J. Super. Ct. App. Div. May 2, 2007).

Prosecutorial misconduct may "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). This occurs only if the misconduct constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." *Id.* at 642; *see also Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (To violate due process, "the

prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial") (citation and internal quotation marks omitted).   It is not enough to show that the prosecutor's conduct was universally condemned.   *See Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).   The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process.   *See Darden*, 477 U.S. at 182; *Donnelly*, 416 U.S. at 644; *Moore v. Morton*, 355 F.3d 95, 111 (3d Cir. 2001).

Here, the prosecutor's comments during the cross-examination of Petitioner did not infect her trial with unfairness so as to make the resulting conviction a denial of due process under *Donnelly*, 416 U.S. at 643.   *See Gooding v. Wynder*, 2012 WL 207068 (3d Cir. Jan. 25, 2012) (applying *Donnelly* test to prosecutor's comments at various stages of trial).   As stated by the trial court, Petitioner denied that she intended to protect anyone else while testifying under oath and Petitioner's attorney did not ask Ms. Wilson about the statements when given the opportunity to do so.   In addition, Petitioner testified about her prior convictions on direct examination and therefore any questioning by prosecutor also on that subject cannot be deemed misconduct.   Thus, the New Jersey courts' adjudication of Petitioner's prosecutorial misconduct claims was not contrary to, or an unreasonable application of Supreme Court precedent, and Petitioner is not entitled to habeas relief on these grounds.

**4.  Cross Examination Limitation (Ground Five)**

In her fifth ground for relief, Petitioner argues that the trial court improperly limited her cross-examination of April Williams regarding whether Ms. Williams' had previously stabbed anyone.  (Pet. ¶ 12.)

Petitioner raised this issue on direct appeal and the Appellate Division rejected it:

> Next, defendant argues that her trial counsel was unfairly curtailed in eliciting testimony from April Williams about alleged prior "bad acts." Specifically, defense counsel sought to ask Williams whether she had used a knife to stab anyone in the past. The judge sustained that objection.
>
> On appeal, defendant concedes that the question was not authorized under N.J.R.E. 404(b), which precludes, subject to certain exceptions shown to be applicable here, the admission of "[e]vidence of other crimes, wrongs, or acts ... to prove the disposition of a person in order to show that such person acted in conformity therewith." *Id.* Instead, defendant argues for the first time that the question should have been allowed under N.J.R.E. 607. Rule 607 merely states the general proposition that any witness may be impeached, and does not speak to the proper methods by which that impeachment may be undertaken. Defendant contends that she had information that Williams had once stabbed a neighbor, and her trial counsel planned to confront Williams with that incident (as well as another incident concerning an attempted stabbing of a family member) after eliciting from her a denial that she never had stabbed anyone. Such an exercise, if it had been permitted by the trial judge, would have circumvented the sound policies underlying Rule 404(b), and would have diverted the trial into collateral matters. The trial judge clearly had the discretion to forestall that evidential detour. *See* N.J.R.E. 403.
>
> Thus, we discern no error, plain or otherwise, in the manner in which these additional evidentiary matters were dealt with at trial.

*State v. Perkins*, 2007 WL 1261308, at * 11-12 (N.J. Super. Ct. App. Div. May 2, 2007).

"In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ...." U.S. Const. Amend. VI. The right is secured for defendants in state as well as federal criminal proceedings by the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. at 403. The protections of the Confrontation Clause necessarily include the right to cross-examination of a witness. *See Smith v. Illinois*, 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). The scope of such cross-examination is, generally, that broad and basic information cannot be excluded; for instance, where credibility is at issue, the trial court cannot ordinarily prohibit the defense from inquiring into a witness's identity and residence. *See id.* Such

questions are "not only an appropriate preliminary to the cross-examination of the witness, but ... [are] an essential step in identifying the witness with his environment, to which cross-examination may always be directed." *Id.* at 132 (quoting *Alford v. United States*, 282 U.S. 687, 693, 51 S.Ct. 218, 75 L.Ed. 624 (1931)).   In other words, defense must be able "to make a record from which to argue [that the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Id.*

However, the right to cross-examination is not without limits, as "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).   Thus, the scope of cross-examination regarding a particular line of inquiry falls necessarily "within the sound discretion of the trial court," and "it may exercise a reasonable judgment in determining when [a] subject is [inappropriate]." *Alford*, 282 U.S. at 694.   "[T]rial judges retain wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679,106 S.Ct. 1431 (1986).

It appears that Petitioner only raises this ground based on a violation of state evidence rules.   However, as previously stated, the violation of a right created by state evidentiary law is not itself cognizable as a basis for federal habeas relief. *See Estelle*, 502 U.S. at 67–68.   Even if the Court were to assume that Petitioner intended to raise a Confrontation Clause violation, she would still be denied relief.   The trial court limited the questioning of April Williams with regard

22

to whether she had previously stabbed anyone.   As stated by the Appellate Division, if the court were to permit such questioning under Rule 607, it "would have circumvented the sound policies underlying Rule 404(b), and would have diverted the trial into collateral matters."   The limitation of cross-examination was well within the discretion of the trial court and the state court ruling was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Accordingly, this ground for habeas relief is denied.

## 5.   Ineffective Assistance of Counsel (Grounds Six and Seven)

In Ground Six of her petition, Petitioner alleges that it was a violation of her right to effective assistance of counsel when her trial attorney failed to obtain April Williams' clothing and conduct a DNA test on the blood.   (Pet. ¶ 12.)   Petitioner also alleges that it was ineffective assistance of counsel when her trial attorney failed to raise the issue of lack of testing by the police. (*Id.*)   In her final ground for relief, Petitioner alleges that her trial counsel was also ineffective for failing to adequately cross-examine April Williams' as to the reason why she was testifying for the state.   (*Id.*)

Petitioner raised both of these issues on PCR, where the trial court and Appellate Division denied relief.   The Appellate Division reasoned:

> The thrust of defense counsel's argument is that defendant's trial attorney should have done more to attempt to show that April Williams was the victim's assailant. In particular, counsel argues that defendant's trial attorney should have cross-examined Williams more vigorously, and also that defendant's trial attorney should have cross-examined the police witnesses for the State about their failure to seize and test the clothing that Williams was wearing at the time of the altercation. Defendant, in her pro se supplemental brief, makes related arguments, contending that further investigation should have been performed and that Williams' clothes should have been preserved and DNA-tested for traces of the victim's blood.
>
> The arguments related to Williams' clothing are based upon complete speculation. *See State v. Cummings*, 321 N.J.Super. 154, 170 (App.Div.) (noting that PCR relief requires more than "bald assertions" by a defendant), *certif. denied*, 162 N.J. 199

23

(1999). There is no indication that if Williams's clothing had been preserved, the victim's blood would have been found on it. The lack of testing, however, is inconsequential. Even if the victim's blood were found on Williams's clothing, that would not necessarily inculpate her in the homicide, given that defendant, the victim, and Williams had all been fighting in the street for a sustained period of time. During the course of that melee, the victim's blood could have spattered on Williams, or it could have transferred to Williams's clothing from contact with defendant.

We agree with the trial judge that defendant's trial attorney was not ineffective in eschewing a trial strategy predicated on hypothetical results of testing of Williams's unpreserved clothing. Nor was defendant actually prejudiced, given the strength of the proofs against her, which included multiple eyewitnesses who saw her plunge a knife into the victim while shouting "die."

We also discern no ineffectiveness in the manner in which defendant's trial attorney cross-examined Williams. Defendant suggests that trial counsel should have brought out that the police had not charged Williams with a crime, thereby accentuating her potential bias in testifying for the State. We conclude that Williams' potential bias was self-evident and would have been readily apparent to the jury. In his summation, defendant's trial attorney emphasized Williams' clear motive to shift blame to defendant. There was no need for trial counsel to ask Williams directly on cross-examination about her motive in testifying. The point was obvious.

*State v. Perkins*, 2010 WL 5418146, at * 2-3 (N.J. Super. Ct. App. Div. Nov.17, 2010).

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *See Strickland*, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. "[C]ounsel should be 'strongly presumed to have rendered

24

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen*, 131 S.Ct. at 1403 (citing *Strickland*, 466 U.S. at 690). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Id.* (citing *Strickland*, 466 U.S. at 688).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.*

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 131 S.Ct. at 788 (citing *Strickland*, 466 U.S. at 687). As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

25

*Strickland*, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

Here, Petitioner cannot meet either prong of the *Strickland* test.  It was clearly reasonable for trial counsel not to pursue the clothing argument.  As discussed by the state courts, even if the victim's blood was found on Ms. Williams' clothing, it would prove nothing since the crime took place during a large scale fight where blood could have easily transferred to Ms. Williams' clothing.  The state court was also correct when it found that trial counsel was not ineffective for the manner in which he cross-examined Ms. Williams.  Given the level of involvement Ms. Williams had in the incident, her motive for testifying for the state was abundantly clear without counsel specifically asking Ms. Williams about it on the stand.  As such, the state court rulings were not contrary to, and did not involve an unreasonable application of, clearly established federal law and these grounds for habeas relief are denied.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.   Thus, no certificate of appealability shall issue.


## IV.   CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.   An appropriate Order follows.


Dated: 4/16/14


_____
Jose L. Linares, U.S.D.J.